UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SILVERMAN PARTNERS LP,                           :
                                                 :
                          Plaintiff,             :        08 CIV 3103 (HB)
                                                 :
         -against-                               :        **OPINION & ORDER**
                                                 :
THE VEROX GROUP and                              :
VEROX TECHNOLOGIES,                              :
                                                 :
                          Defendant.             :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge**[*]**:**

      Silverman Partners LP ("Plaintiff" or "Silverman") is an investment company that invested in and issued a loan to defendant, The Verox Group ("Verox Group") between April 2006 and March 2007. Verox Group was to begin repaying its loan to Silverman in September 2007. Instead, according to Plaintiff, Verox Group transferred its assets and business to Verox Technology, LLC[1] ("Verox Technologies") —a company located at the same address, owned by the same shareholders, and doing the same essential business— which left Silverman without any return on his investment or any repayment on his loan. Silverman now brings suit against both Verox Group and Verox Technologies for fraud, breach of their loan agreement, fraudulent conveyance, and in the case of Verox Technologies, successor liability. Further, Plaintiff seeks judicial dissolution of Verox Group, an accounting, and damages. Verox Technologies brings a motion to dismiss for failure to state a claim, specifically that Plaintiff cannot demonstrate successor liability. For the reasons set forth below, Verox Technologies' motion is DENIED.

### I.   BACKGROUND

      Silverman is a New York limited partnership that invests in small to medium size businesses, with its principal place of business in New York,. Am. Compl. ¶¶ 4, 7. Defendants

---

[*] Alyssa Chrystal, an intern in my Chambers for the summer of 2010, and a second-year law student at Pepperdine University School of Law, provided substantial assistance in the research and drafting of this opinion.
[1] Plaintiff has brought suit against "Verox Technologies," Am. Compl. ¶ 6, but counsel for the defendant corporation states that its name is actually Verox Technology LLC.

Verox Group and Verox Technologies are corporations, incorporated in Delaware and Nevada respectively, with their principal places of business in New Hampshire. *Id.* ¶¶ 5-6. Until December 2007, Verox Group manufactured chemicals and installed equipment to disinfect water for the poultry industry, and Verox Technologies began doing the same work after it was created in June 2007. *Id.* ¶¶ 8-9, 22, 39.

This case arises out of Plaintiff's investment in Verox Group and Verox Group's failure to repay a loan made to it by Plaintiff. In March 2006, Plaintiff met with the two managing members of Verox Group, Kenneth Howlett and William Edwards (the "Managing Members"). *Id.* ¶ 10. The Managing Members, who owned seventy-five percent of Verox Group, sought an investment from Plaintiff and made statements to Plaintiff about Verox Group's financial health. *Id.* ¶¶ 10, 25; Pl.'s Mem. in Opp'n to Verox Technologies' Mot. to Dismiss Ex. B ("Pl.'s Mem. in Opp'n").[2] Specifically, Plaintiff was told that Verox Group's monthly revenue was $80,000, and was provided with charts and graphs detailing Verox Group's cash flow. Am. Compl. ¶ 25. In April 2006, Plaintiff invested $300,000 in Verox Group and was supposed to have received fifteen percent ownership of Verox Group in return. *Id.* ¶ 11. Subsequently, the Managing Members claimed that Verox Group had increased its sales over the course of several months, and Plaintiff thereupon invested an additional $450,000 in Verox Group in September 2006. This was supposed to have increased Plaintiff's ownership to twenty-five percent. *Id.* ¶ 12. Following this investment, Plaintiff was informed that the value of Verox Group had increased by almost three hundred percent. *Id.* ¶ 13.

The following year, in March 2007, Plaintiff allegedly loaned $275,000 to Verox Group. *Id.* ¶ 32. Verox Group was to begin repaying the loan in September 2007 by making monthly payments of $11,000 over the course of twenty-five months, with five percent interest accruing if the payments were not on time. *Id.* ¶ 33. However, despite written and verbal demands from Plaintiff, Verox Group failed to make any payments on the loan. *Id.* ¶ 34. In December 2007, Verox Group notified Plaintiff that it would be closing up shop at the end of the year. *Id.* ¶ 39.

---

[2] In considering a motion to dismiss, the court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), as well as documents referenced in the complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). In its Amended Complaint, Plaintiff references documents produced to it "as a result of Managing Members bankruptcy proceedings," Am. Compl. ¶ 57, and so the court may properly consider the exhibits Plaintiff attaches to its

Verox Group never provided an accounting of Verox Group, updates on the company's financial health, or any explanation as to why it stopped conducting business. *Id.*

In June 2007, three months before Verox Group was to begin making payments on its loan to Plaintiff, the Managing Members of Verox Group formed a new corporation called Verox Technologies. *Id.* at ¶ 22. Howlett and Edwards each held fifty percent ownership interest in the newly created Verox Technologies. Pl.'s Mem. in Opp'n Ex. B. Verox Group transferred both its tangible and intangible assets to Verox Technologies, leaving the company Plaintiff invested in with nothing. Am. Compl. ¶ 52. In November 2007, Howlett submitted a letter to the Environmental Protection Agency requesting that several Verox Group pesticide registrations be transferred to Verox Technologies. Pl.'s Mem. in Opp'n Ex. E.

After Verox Group ceased doing business, Plaintiff alleges that Verox Technologies continued to operate under the direction of Verox Group's Managing Members, with Verox Group's EPA registrations, and all of Verox Group's assets. Pl.'s Mem. in Opp'n Exs. B, C, E. Verox Technologies also hired two of Verox Group's independent sales representatives and conducted business with some of Verox Group's former customers. *Id.* Exs. D, F. While Verox Technologies was registered in Nevada and Verox Group in Delaware, Plaintiff asserts that both have their principal places of business in New Hampshire and that they occupy the same physical location. *Id.* Exs. B, C; Am. Compl. ¶¶ 5- 6, 61. Plaintiff further alleges that Verox Group is now a shell company with no cash or other assets and that there was, essentially, a de facto merger between Verox Group and Verox Technologies. *Id.* ¶¶ 50, 63.

Silverman claims that Verox Group made various misrepresentations about its financial state in order to mislead Plaintiff into believing it was a viable company and to induce Plaintiff to invest in the business. *Id.* ¶ 28. Silverman alleges that Verox Group never had monthly revenue higher than $30,000 despite statements from the Managing Members that the monthly revenue was $80,000, and that the Managing Members and other unknown investors misrepresented their stock interest in Verox Group. Plaintiff also claims Verox Group misrepresented the price of certain pumps prior to its acquisition of the $275,000 Silverman loan; the Managing Members told Silverman the pumps cost $215,000 when they only cost

---

Memorandum of Law in Opposition to Defendant Verox Technologies' Motion to Dismiss.

$25,000. *Id.* ¶¶ 25-27. Plaintiff names Verox Technologies as a defendant in this action as a successor to Verox Group. Plaintiff alleges that Verox Technologies is continuing Verox Group's business and was created to avoid Verox Group's obligations to Plaintiff. *Id.* ¶ 51. Silverman further claims the Verox Group assets were fraudulently conveyed to Verox Technologies and transferred without fair compensation, which allegedly defrauded Silverman of his investment and loan. *Id.* ¶¶ 52-53

Only Verox Technologies moves to dismiss the action, and argues that the successor liability claim is premature because Plaintiff has not yet secured a judgment against Verox Group,[3] and also that Plaintiff failed to present sufficient facts to support a finding of successor liability pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Legal Standard

To survive a motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950. To decide the motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint," *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted), as well as "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing

---

[3] Verox Technologies' argument that successor liability is premature is at best without merit. The only authority Verox Technologies cites in support of its argument is Articles 51 and 52 of the Civil Practice Law and Rules, claiming that these articles "provide for enforcement of judgments or orders against third parties" and, because "no act by the defendant Verox Technology, LLC is claimed by plaintiff to constitute the basis of its cause of action against The Verox Group, no basis exists at this time for permitting plaintiff to seek successor liability against movant." There is simply no support for this argument. In *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003), for example, a successor liability claim was brought against the successor corporation before a judgment against the predecessor had been attained. *Id.* at 43 n.1 ("We assume the existence of the debt for the purpose of this appeal.").

suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

### B. Succesor Liability[4]

Plaintiff asserts that Verox Technologies is the successor corporation to Verox Group and should be held responsible for Verox Group's debts to Plaintiff. "[T]he purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (citing *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983)). While this is the general rule, there are four exceptions where the successor corporation will be liable for the predecessor's debts: "(1) a buyer who formally assumes a seller's debts, (2) transactions undertaken to defraud creditors, (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Id.* (citing *Schumacher*, 451 N.E.2d at 198); *see also New York v. Nat'l Serv. Indus.*, 460 F.3d 201, 209 (2d Cir. 2006). The party alleging successor liability "has the burden of proving facts which bring the case within one of these exceptions." *Desclafani v. Pave-Mark Corp.*, No. 07 Civ. 4639, 2008 WL 3914881, at *3 (S.D.N.Y. 2008); *see also Heights v. U.S. Elec. Tool Co.*, 525 N.Y.S.2d 653, 654 (N.Y. App. Div. 1988). While Plaintiff has only based its successor liability claim on the de facto merger exception, the facts indicate that the mere continuation and transactions undertaken to defraud creditors exception may apply as well. *See Societe Anonyme Dauphitex v. Schoenfelder Corp.*, No. 07 Civ. 489, 2007 WL 3253592, at *4 (S.D.N.Y. Nov. 2, 2007) ("a district court has broad latitude in determining whether another theory of relief with respect to those same allegations is available") (quoting *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 454 (S.D.N.Y. 2006)).

#### 1. De Facto Merger

A de facto merger occurs "when the transaction between the purchasing and selling companies is in substance, if not in form, a merger." *Nat'l Serv. Indus.*, 460 F.3d at 205. Factors to be considered to determine if the activity constitutes a de facto merger include (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation; (3) the successor's assumption of liabilities necessary for the uninterrupted continuation of the

---

[4] The parties do not dispute that New York law governs in this case. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent … is sufficient to establish choice of law." (internal quotation marks omitted)).

business of the predecessor corporation; and, (4) continuity of management, personnel, physical location, assets and general business operation. *Cargo*, 352 F.3d at 46 (quoting *Fitzgerald v. Cahnestock & Co.*, 730 N.Y.S.2d 70, 71 (App. Div. 2001)). These factors should be analyzed in a flexible, rather than formulaic, manner, and the court should consider "whether, in substance, it was the intent of [the successor] to absorb and continue the operation of the [predecessor]." *Nettis v. Levitt*, 241 F.3d 186, 193-94 (2d Cir. 2001) (brackets in original) (citations omitted), *overruled on other grounds*, *Slayton v. American Exp. Co.*, 460 F.3d 215, 226-28 (2d Cir. 2006); *see also Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86, 89 n.1 (S.D.N.Y. 2002). The Second Circuit has declined to decide whether all four factors must be met in order to find a de facto merger, *Cargo*, 352 F.3d at 46, and state and district courts in this circuit have found a de facto merger without all four being present. *See Fitzgerald*, 730 N.Y.S.2d at 71 ("Not all of these elements are necessary to find a de facto merger."); *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985) ("Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger.") (internal citation omitted); *Allen Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc.*, No. 90 Civ. 264 (SWK), 1993 WL 183771, at *6 (S.D.N.Y. May 27, 1993) (quoting *Lumbard*). The key, and one factor that must be present according to the Second Circuit, is continuity of ownership. *Cargo*, 352 F.3d at 46. ("Whichever test applies, we are confident that the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership."); *see also Nat'l Serv. Indus.*, 460 F.3d at 212 ("[C]ontinuity of ownership is the 'essence of the merger' and thus a necessary predicate to a finding of a de facto merger.") (quoting *In re N.Y. Asbestos Litig.*, 789 N.Y.S.2d 484, 487 (App. Div. 2005))). Therefore, while "continuity of ownership might not alone establish a de facto merger … it is the substance of a merger" and must be shown to proceed. *Cargo*, 352 F.3d at 47 (internal quotations omitted). Here, there are ample factual allegations for me to find continuity of ownership.

Another factor in determining whether a de facto merger has occurred evaluates whether there is "continuity of management, personnel, physical location, assets and general business

operation." *Cargo*, 352 F.3d at 46.  In its Amended Complaint, Plaintiff alleges that Verox Technologies is "engaged in virtually the identical business of Verox Group" and operates from the same physical location in New Hampshire with all of Verox Group's tangible and intangible assets.  Am. Compl. ¶¶ 5-6, 22.  Additionally, Plaintiff alleges that Verox Technologies operates under the same management, i.e. the Managing Members, uses two of the same independent sales representatives, sells the same products offered by Verox Group, and uses the same customer lists.  These allegations are sufficient to satisfy this factor for a de facto merger.

While continuity of ownership and continuity of business operations, management, and assets are sufficient to establish a de facto merger at the pleading stage, *see Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 306 (S.D.N.Y. 2006), the other factors indicative of a de facto merger are present here as well.  Although Verox Group has not yet been dissolved, the dissolution factor may be met when the corporation is "'shorn of its assets and has become, in essence, a shell . . .'"  *In re N.Y. Asbestos Litig.*, 789 N.Y.S.2d at 487 (quoting *Fitzgerald*, 730 N.Y.S.2d at 72); *Societe Anonyme*, 2007 WL 3253592, at *4 (quoting *Fitzgerald*); *see also Cargo*, 207 F. Supp. 2d at 98 ("[I]t seems reasonably sufficient if the seller has become an empty shell even though not dissolved.").  Here, Plaintiff alleges that Verox Group transferred all of its assets, both tangible and intangible, to Verox Technologies, and so it has been shorn of its assets, and that Verox Group is only in existence as a shell company.  The allegations suggest that Verox Group as an ongoing business has been dissolved in fact, if not in law, and therefore satisfies this factor.

The last factor to consider for a de facto merger is the "assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business."  *Nettis*, 241 F.3d at 193.  While the successor corporation must assume liabilities so that it can "continue the ordinary business of the predecessor without interruption," *Diaz*, 707 F. Supp. at 102, it does not need to assume all actual or potential liabilities and debts.  *Miller*, 2005 WL 267551, at *9.  Here, Plaintiff presents evidence that Verox Technologies acquired Verox Group's Environmental Protection Agency registrations, as well as retained two sales representatives who had previously worked for Verox Group.  Taken together, Plaintiff has alleged sufficient facts from which it can be inferred that it was the intent of Verox Technologies to absorb and continue

the operation of Verox Group and that a de facto merger occurred.

    2. Mere Continuation

The mere continuation exception applies where "'it is not simply the business of the original corporation which continues, but the corporate entity itself'" and there is a "'common identity of directors, stockholders, and the existence of only one corporation at the completion of the transfer.'" *Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 626-27 (S.D.N.Y. 2007) (quoting *Ladjaverdian*, 431 F. Supp. at 839). The purpose of the exception is to:

> prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors. . . . Thus, the underlying theory of the exception is that [] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.

*Societe*, 2007 WL 3253592, at *6 (quoting 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7124.10 (rev. perm. ed. 1999). The Second Circuit has noted that many courts find the de facto merger and mere continuation exceptions so similar that "they may be considered a single exception." *Cargo*, 352 F.3d at 45 n.3 (citing cases); *but see Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 839 (S.D.N.Y. 1977) (distinguishing between the de facto merger exception and the mere continuation exception). While some courts have held that the predecessor corporation must be extinguished in the sale for the mere continuation exception to apply, *Schumacher*, 451 N.E.2d at 198, many others have found that the exception still applies if the predecessor transfers its assets, business location, address, employees, good will and management, and it is logical to infer that the successor corporation was created to avoid liability. *Societe*, 2007 WL 3253592, at *6-7; *see also McDarren v. Marvel Entm't Group, Inc.*, No. 94 Civ. 910 (LMM), 1995 WL 214482, at *9 (S.D.N.Y. Apr. 7, 1995) (distinguishing *Schumacher* in holding that the mere continuation exception is satisfied when the predecessor transfers not only assets, but also business location, employees, management and good will to the successor, even when the predecessor continues to exist as a shell corporation). As noted, *supra*, Plaintiff has alleged sufficient facts from which it can be inferred that Verox Technologies was a continuation of Verox Group.

    3. Transactions Undertaken to Defraud Creditors

When a party has alleged facts to show that a fraudulent conveyance may have taken place, it can be inferred that the transaction was undertaken to defraud creditors and the second exception for imposing successor liability applies. *A.J. Heel Stone, L.L.C. v. Evisu Int'l, S.R.L.*, No. 03 Civ. 1097 (DAB), 2006 WL 1458292, at *4 (S.D.N.Y. May 25, 2006) (denying motion to dismiss successor liability claim "[b]ecause the Court has found that Petitioner has adequately pled fraudulent conveyance"). Under Section 276 of the New York Debtor and Creditor Law, a conveyance made "'with actual intent . . . to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors.'" *Cargo*, 207 F. Supp. 2d at 115 (quoting N.Y. Cred. & Debt. Law § 276).[5] In order to set aside a fraudulent conveyance, a party must "plead actual intent to defraud with the particularity required by Fed. R. Civ. P. 9(b)." *A.J. Heel Stone*, 2006 WL 1458292, at *3. Circumstantial evidence may be used to infer actual intent to defraud and there are certain "badges of fraud" to be used when determining if actual intent exists, which include: (1) the inadequacy of consideration received, (2) the close relationship between the parties to the transfer, (3) information that the transferor was insolvent by the conveyance, (4) suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or (5) the use of fictitious parties. *Id.* at *3 (citing *Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (America) Corp.*, 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005)).

Plaintiff alleges in its Amended Complaint that Verox Group transferred all of its assets to Verox Technologies sometime after June 21, 2007, that the Managing Members devised a scheme where they created Verox Technologies to avoid the debts and obligations which Verox Group owed to Plaintiff, and that the transfer was made by Verox Group and received by Verox Technologies with actual intent to hinder, delay and/or defraud Plaintiff as a shareholder and creditor. Plaintiff has alleged four of the five "badges of fraud" noted above. Based on these pleadings, Plaintiff has alleged sufficient facts to show that there may have been a fraudulent conveyance, and so the exception to successor liability which evaluates whether a transaction was undertaken to defraud creditors applies.

---

[5] While Plaintiff does not specifically bring its fraudulent conveyance claim under this section, it is clear that Plaintiff is alleging Verox Group made a conveyance with intent to defraud under Section 276 of the New York Debtor and Creditor Law, as it claims that the conveyance was "made with actual intent to hinder, delay and/or

conveyance, and so the exception to successor liability which evaluates whether a transaction was undertaken to defraud creditors applies.

### III. CONCLUSION

Plaintiff has pled sufficient facts to demonstrate successor liability on any number of theories. As such, Verox Technologies' motion to dismiss is DENIED.

The parties are reminded, pursuant to the Pretrial Scheduling Order, that the dispositive motion deadline passed on June 30, 2010, and trial is scheduled for September 2010.

**SO ORDERED**
July 16, 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.